UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
VALINA C. SULLIVAN,

                Plaintiff,                        **MEMORANDUM AND ORDER**

       v.                                            22-CV-3420 (RPK) (LB)

CREEDMOOR PSYCHIATRIC CENTER,
MARTHA ADAMS SULLIVAN, DARRIN
GERSON, ADRIENNE JONES, JEFF
WILLIAMS, CLARA ORTIZ, MARIE S.
JEAN-LOUIS, NEUKA ENJUKA,
MS. CHARLES, MATTHEW SUJATA,
MS. JACKSON, CARLA WRIGHT, KIZLE
REDHEAD, KIMBERLY HUTCHINSON,
and PHILLIP-NOE,

                Defendants.
-----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      In this lawsuit, *pro se* plaintiff Valina C. Sullivan principally alleges that she was discriminated against and retaliated against in connection with her employment at Creedmoor Psychiatric Center. Defendants move to dismiss the complaint. For the reasons discussed below, the motion is granted in part and denied in part.

## BACKGROUND

      The following facts are taken from the complaint and plaintiff's papers opposing the motion to dismiss. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in [her] papers opposing the motion.").

      Plaintiff is employed as a secure care treatment aide at Creedmoor Psychiatric Center in Queens, New York. Compl. 2–3, 20 (Dkt. #1). She is a black woman of American national origin and was born in 1958. *Id*. at 13, 20. Plaintiff alleges that between 2019 and 2022, defendants

1

subjected her to "discrimination, retaliation, harassment, assault, targeting, intimidation, bullying, defamation of character, slander of [her] name, tarnishing [her] work reputation, workplace violence, . . . violation of [her] employee rights, [and] civil rights." *Id*. at 9, 11–12. Her allegations are as follows:

In April 2019, plaintiff was monitoring a patient one-on-one during her night shift on "ward 8A" when defendant Darrin Gerson notified plaintiff that she had completed a patient monitoring form 15 minutes too early. *Id*. at 32. An hour later, plaintiff received a call informing her that she could not work on ward 8A, that she had to go to ward 8, and that she could not monitor patients one-on-one. *Ibid*.

In July 2019, a patient on ward 8A reported that defendant Kimberly Hutchinson told the patient to call the New York State Justice Center for the Protection of People with Special Needs and report plaintiff "so she can get fired and lose her pension." *Id*. at 31. An investigation was conducted, and plaintiff was directed to give a statement to "Risk Management." *Ibid*. Plaintiff was "interrogated" by a human resources specialist but was allowed to return to work. *Ibid*.

In November 2019, plaintiff met with Gerson to complain that defendant Kizle Redhead was "us[ing] the patient care to harass" plaintiff. *Ibid*. The following month, plaintiff was working with Redhead when Redhead picked up a phone receiver in an "aggressive manner" and caused the phone receiver's cord to strike plaintiff on the left side of her head. First Letter in Opp'n to Mot. to Dismiss ("First Letter") 2, 43 (Dkt. #22). Plaintiff reported Redhead to her shift supervisor, defendant Matthew Sujata,[1] and also filed a workplace violence report. *Id*. at 2. Creedmoor investigated the incident and found that "[t]he claim of Workplace Violence is inconclusive," and "the complaint does not meet the definition of [workplace violence]." *Id*. at 42. Plaintiff alleges

---

[1] Plaintiff's submissions spell Mr. Sujata's name inconsistently. The Court has adopted the spelling used in plaintiff's form complaint. *See* Compl. 6.

2

without further detail that Redhead "retaliated by filing false discrimination claims on [plaintiff] with others," and "Creedmoor's leadership helped her by discrimination and retaliating" against plaintiff. Second Letter in Opp'n to Mot. to Dismiss 2 ("Second Letter") (Dkt. #23). Plaintiff also alleges, again without further detail, that in January 2020 Redhead "assaulted [plaintiff] while working on ward 8A night shift." Compl. 31; First Letter 55.

On March 9, 2020, plaintiff reported to work on ward 8A and was informed by Sujata that she could not work there. Compl. 20. Plaintiff was then told by defendant Enjuka Neuka that she "can't work ward 8A" and must instead "go to ward 2B." *Ibid*. Plaintiff was not told why she could not work on ward 8A. *Ibid*.

Also on March 9, 2020, plaintiff was directed to appear for "interrogation" regarding discriminatory conduct that plaintiff allegedly engaged in. *Id*. at 30; First Letter 47. Plaintiff spoke to an affirmative action officer, and defendant Clara Ortiz later issued plaintiff a "Notice of Discipline" containing five "charges" of "misconduct/incompetence" that Creedmoor had brought against her in connection with comments she allegedly made to ward 8A employees between November 2019 and February 2020. Compl. 26–27, 30; First Letter 2, 5. Specifically, plaintiff was charged with (1) telling Sujata "these immigrants come here and don't want to work"; (2) yelling, "I don't want [Hutchinson] working here and if she's working here, I'm leaving"; (3) stating after hearing that another employee was going to human resources, "Y'all think y'all pulling the wool over my eyes, but I see what's going on, y'all not gonna keep disrespecting me in here and going over me, cause I don't play that. If you need to go somewhere you tell me, not the nurse. That's the problem, I'm overqualified, more qualified than y'all, I came to Creedmoor with this qualification and y'all don't understand"; (4) telling Redhead, "Why don't you go back to ward 2B (Geriatric ward) and clean shit, they need you down there"; and (5) loudly stating while

3

Redhead was assisting a nurse with a blood draw on an agitated patient, "You have EOFS, get out of here, go do your assignment," when Redhead had already completed the assignment. Compl. 26–27. Ortiz provided plaintiff with a resignation package that plaintiff had not requested, and the Notice of Discipline recommended a four-week suspension. *Id*. at 27, 30; First Letter 2. In July 2020, plaintiff filed a union grievance, stating that "[t]he charges are not true." Compl. 23.

Eventually, an expedited arbitration hearing was held regarding the Notice of Discipline. First Letter 4. After several witnesses testified, the arbitrator found plaintiff guilty of the first, second, and fifth charges. *Id*. at 5–6. Creedmoor voluntarily withdrew the third charge, and the arbitrator concluded that the fourth charge was inadequately substantiated because Redhead "could not remember any specific details" about the incident. *Id*. at 6–7. Plaintiff was suspended for two weeks without pay. *Id*. at 8. Plaintiff did not testify, and she alleges that Sujata "lied to the arbitrator and lied under oath" and that the arbitrator "never did any investigating on [plaintiff's] behalf." *Id*. at 3.

In July 2021, plaintiff was again assigned to ward 2B. Second Letter 1. Plaintiff filed a grievance with her union, arguing that the assignment constituted "out-of-title" work under her union's contract. *Id.* at 1, 4. Plaintiff continued working in ward 2B until October 2021. *Id.* at 1.

In August 2021, Redhead "was prompting and coercing a patient into verbalizing about becoming a danger and a threat to [plaintiff] while working on ward 8A night shift." Compl. 28. Plaintiff spoke to a supervisor and wrote a workplace violence statement. *Ibid*. Plaintiff was then "forced to leave 8A ward." *Ibid*. Plaintiff alleges that every time she reports Redhead, Redhead "becomes retaliatory against [her], using the patient care, the nurse, and the co-workers to help her." *Ibid*.

4

On February 16, 2022, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Compl. 20–21. In her EEOC charge, plaintiff alleged that she was "being treated unfairly . . . because of [her] national origin (Black/American), sex (Female), [and] age (63)." *Id*. at 20. And more specifically, plaintiff stated that she was discriminated against on March 9, 2020, because she was told that she could not work on ward 8A and was instead forced to work on ward 2B. *Ibid*. Plaintiff wrote that "[t]his is the 3rd time" that she had been assigned to ward 2B, and she "filed a Grievance with the union on July 29, 2021," about "being assigned to ward 2B." *Ibid*. Plaintiff received a right-to-sue letter on March 14, 2022. *Id*. at 17.

On March 7, 2022, one of plaintiff's co-workers, defendant Carla Wright, reported plaintiff for sleeping while monitoring a patient one-on-one. Compl. 28; First Letter 3. Plaintiff was then removed from ward 8A. First Letter 3. Plaintiff alleges that "Wright does not like [her] because [she is] a Black American woman, the age of 63," and "Wright only wants her Jamaican counterparts like herself and others who are not Black Americans working with her on ward 8A." Compl. 28.

On March 18, 2022, Ortiz directed plaintiff to appear for a "virtual interrogation" regarding the March 7 incident. First Letter 56. Plaintiff was questioned by a Justice Center investigator, and she denied sleeping but allegedly admitted closing her eyes "for approximately 1 to 2 minutes." *Id*. at 3, 58. Wright's allegation was determined to be "unfounded" on April 4, 2022. *Id.* at 3. On July 17, 2022, plaintiff was given "educational counseling . . . where it was discussed that one-to-one observation is designed to provide extra supervision and support for the patient who presents an immediate danger to self and/or others, and staff must be in unobstructed constant direct visual observation at a distance from the patient." *Id*. at 3, 58. Plaintiff received a memorandum that

5

summarized the counseling and was placed in plaintiff's personnel folder. *Id*. at 58. Plaintiff had received counseling on only one other occasion in her 20 years of employment at Creedmoor. *See* Compl. 27.

Plaintiff filed this action in June 2022. *See generally* Compl. She claims that Creedmoor and 14 individual Creedmoor employees violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Compl. 2–8. Plaintiff alleges that she was discriminated against on the basis of her race, gender, national origin, and age, and that she was retaliated against for engaging in protected activity. *Id*. at 9, 13.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a 'probability requirement.'" *Ibid*. (quoting *Twombly*, 550 U.S. at 556). But it requires a plaintiff to allege sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Ibid*. But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid*.

6

The complaint of a *pro se* plaintiff must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotation marks and citations omitted). *Pro se* status, however, does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quotation marks omitted) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

The motion to dismiss is granted in part and denied in part. The motion is granted as to plaintiff's claims against the individual defendants, plaintiff's ADEA claim against Creedmoor, and plaintiff's Title VII discrimination claim against Creedmoor. The motion is denied as to plaintiff's claim that Creedmoor retaliated against her for filing an EEOC charge.

### I.  Plaintiff's Claims Against the Individual Defendants Are Dismissed

Plaintiff's claims against the individual defendants are dismissed because neither Title VII nor the ADEA subjects individuals to personal liability. *See, e.g.*, *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) ("[D]ismissal of the Title VII and ADEA claims against the individual Defendants was appropriate as neither statute subjects individuals, even those with supervisory liability over the plaintiff, to personal liability."); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 n.8 (2d Cir. 2006); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995); *Williams v. N.Y.C. Dep't. of Educ.*, No. 17-CV-1996 (AJN), 2018 WL 4735713, at *4 (S.D.N.Y. Sept. 29, 2018).

### II.  Plaintiff's ADEA Claim Against Creedmoor Is Dismissed

Plaintiff's ADEA claim against Creedmoor is dismissed because Creedmoor is immune. Under the Eleventh Amendment of the United States Constitution, states and their agencies are

7

immune to suits brought by private individuals, unless the state has waived its sovereign immunity or Congress has validly abrogated it. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). New York State has not waived its sovereign immunity under the ADEA, *Nicolae v. Off. of Vocational & Educ. Servs. for Individuals with Disabilities*, 257 F. App'x 455, 456–57 (2d Cir. 2007), and Congress has not abrogated it, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 92 (2000). Because Creedmoor is a state agency for purposes of the Eleventh Amendment, plaintiff's ADEA claim against Creedmoor necessarily fails. *See, e.g.*, *Harvey v. Creedmoor Psychiatric Ctr.*, No. 21-CV-7031 (PKC) (LB), 2022 WL 36169, at *2 (E.D.N.Y. Jan. 4, 2022); *Meyer v. N.Y. Off. of Mental Health*, No. 12-CV-6202 (PKC), 2014 WL 1767818, at *3 (E.D.N.Y. May 2, 2014).

### III.   Plaintiff's Title VII Claims Against Creedmoor Are Dismissed in Part

Plaintiff's Title VII discrimination claim against Creedmoor is dismissed. Plaintiff's Title VII retaliation claim against Creedmoor is dismissed in part.

#### a.   Plaintiff Fails to State a Title VII Discrimination Claim.

Plaintiff fails to state a plausible Title VII discrimination claim.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "In adopting this language, 'Congress intended to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national origin.'" *Banks v. Gen. Motors, LLC*, No. 21-CV-2640, 2023 WL 5761361, at *15 (2d Cir. Sept. 7, 2023) (citation omitted). But Title VII does not create "a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). Accordingly, "mistreatment at work . . . is actionable under Title VII only when it occurs because

8

of an employee's . . . protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

"[T]o defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). "A plaintiff can meet that burden through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *Ibid*. (internal citation omitted). Whether certain facts give rise to a plausible inference of discrimination is a "flexible [inquiry] that can be satisfied differently in differing factual scenarios." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). "Circumstances contributing to a permissible inference of discriminatory intent may include . . . the employer's criticism of the plaintiff's performance in ethnically degrading terms, or its invidious comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (citations omitted).

Here, plaintiff alleges virtually no facts that could give rise to a plausible inference that any adverse employment actions she suffered were motivated by her race, color, religion, sex, or national origin. Indeed, plaintiff's only allegation referencing a protected characteristic is that Wright "was discriminating against [plaintiff] . . . because [plaintiff is] a Black American woman, the age of 63," and "Wright only wants her Jamaican counterparts like herself and others who are not Black American working with her on ward 8A." Compl. 28. This "naked assertion[]" that plaintiff was discriminated because of a protected characteristic is insufficient to state a plausible discrimination claim. *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.

9

1978); *see Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994) ("[A] complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6).") (citation omitted); *Ortiz v. Montefiore Hosp.*, No. 18-CV-4857 (AMD) (LB), 2019 WL 1903366, at *3 (E.D.N.Y. Apr. 29, 2019) ("The plaintiff's racial animus allegations against her supervisors—that Mr. Wright favored her African American coworkers and Mr. Camacho was motivated by racial animus against Hispanic females—are conclusory and insufficient.") (quotation marks and brackets omitted). Likewise, plaintiff cannot state a claim by merely asserting that "Creedmoor's leadership . . . discriminat[ed] and retaliate[ed]" against her, Second Letter 2. *See, e.g.*, *Walker v. Triborough Bridge & Tunnel Auth.*, No. 21-CV-474 (VEC), 2021 WL 5401483, at *1 (S.D.N.Y. Nov. 18, 2021) (dismissing Title VII discrimination claims where the complaint contained "nothing more than conclusory language that Defendants' alleged actions were motivated by discriminatory intent"); *Yu v. City of New York*, No. 17-CV-7327, 2021 WL 1063440, at *4 (S.D.N.Y. Mar. 19, 2021) (dismissing Title VII claims where plaintiff "failed to provide any factual allegations . . . that would support an inference that any of the acts taken by [the defendant] . . . were motivated even in part by Plaintiff's race, national origin, or color.").

Equally deficient is plaintiff's allegation that she did not "receive the same treatment from Creedmoor's leadership" as Redhead. Second Letter 2. "A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination." *Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 20 (2d Cir. 2013). But to raise such an inference, "the other employee must be 'similarly situated to the plaintiff in all material respects.'" *Ibid.* (citation omitted). Here, plaintiff alleges no facts indicating that she was similarly situated to

Redhead. Nor does plaintiff even allege that Redhead was not a member of plaintiff's protected groups.

Accordingly, plaintiff fails to state a plausible Title VII discrimination claim.

### b. Plaintiff's Title VII Retaliation Claim is Dismissed in Part.

Plaintiff fails to state a Title VII retaliation claim based on her participation in a July 2019 investigation relating to Hutchinson, her workplace violence report relating to Redhead, and her union grievances. However, the motion to dismiss is denied as to plaintiff's claim that Creedmoor retaliated against her for filing an EEOC charge.

Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To state a claim for retaliation, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015) (citation omitted). "Protected activity is defined broadly to include virtually any instance where 'an employee communicates to [his] employer a belief that the employer has engaged in . . . a form of employment discrimination.'" *O'Brien v. City of N.Y., Dep't of Educ.*, No. 22-CV-3117 (KAM) (LB), 2023 WL 5200476, at *6 (E.D.N.Y. Aug. 14, 2023) (quoting *Littlejohn*, 795 F.3d at 317). This includes "the filing of formal charges of discrimination as well as . . . the making of informal protests of discrimination." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001). "However, while such complaints may be informal, they cannot be so vague or 'generalized' that the employer could not 'reasonably have understood [] that the plaintiff's complaint was directed at conduct prohibited

11

by Title VII." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 222 (E.D.N.Y. 2014) (quoting *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)).

Plaintiff's Title VII retaliation claim is dismissed in part. Plaintiff's first two allegations—(i) that Hutchinson retaliated against her for "giv[ing] a statement" regarding a July 2019 incident in which Hutchinson allegedly told a patient to "call the [J]ustice [C]enter on [plaintiff], so she can get fired and lose her pension," First Letter 1; *see* Compl. 31; and (ii) that Redhead filed a false discrimination complaint against plaintiff in retaliation for her December 2019 workplace violence report, Second Letter 2—do not state a claim because plaintiff has not alleged that either of these incidents related to plaintiff's participation in protected activity. As to the first allegation, there is no indication that the investigation into the July 2019 incident was connected to conduct that is prohibited by Title VII. And as to the second incident, plaintiff's workplace violence report does not allege discrimination, nor does it draw any connection between the alleged assault and a protected characteristic such as plaintiff's race, gender, or national origin. *See Walker*, 2021 WL 5401483, at *6 ("Walker failed to allege that she engaged in a protected activity" because "Walker has not alleged that the Workplace Violence Incident form that she filed . . . drew any connection between the poor treatment about which she was complaining and her race or gender.").

Next, to the extent that plaintiff suggests she was retaliated against for filing union grievances, *see* Compl. 20, plaintiff fails to state a claim because she has not alleged that either grievance constituted protected activity under Title VII. Plaintiff's July 2020 grievance regarding her disciplinary charges stated only that "[t]he charges are not true." Compl. 23. And plaintiff's July 2021 grievance stated only, "I'm on the grid for ward 2B, however, I'm assigned to ward 8A and I'm asking to be put back on the grid for ward 8A." Second Letter 4. Accordingly, plaintiff has not stated a Title VII claim relating to either grievance. *See Ellis v. Century 21 Dep't Stores*,

12

975 F. Supp. 2d 244, 280–81 (E.D.N.Y. 2013) ("When making the complaint, a plaintiff must do so in 'sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, or national origin.'") (citation omitted).

However, plaintiff plausibly alleges that she was retaliated against for filing an EEOC charge on February 16, 2022.[2]  Plaintiff alleges that on March 7, 2022—19 days after plaintiff filed her EEOC charge—Wright reported her for sleeping while monitoring a patient.  First Letter 3.  Then on March 22, 2022, a Justice Center investigator questioned plaintiff regarding the allegation and determined that the report was "unfounded."  First Letter 3, 56.  Plaintiff nevertheless received on June 17, 2022, a written counseling memorandum, which was placed in plaintiff's personnel file. *Id*. at 58.

Plaintiff's allegations regarding the EEOC charge are sufficient to state a claim.  First, plaintiff's EEOC charge constitutes protected activity under Title VII. *See Bowen-Hooks*, 13 F. Supp. 3d at 222–23 (stating that filing "a formal charge with the EEOC" constitutes protected activity under Title VII).  Second, Creedmoor knew of plaintiff's EEOC charge, because a copy of plaintiff's right-to-sue letter was sent to Creedmoor's director of human resources on March 14, 2022.  *See* Compl. 15–16.  Third, plaintiff has plausibly alleged that placing a written counseling memorandum in her personnel file constituted an adverse employment action.  "To establish an adverse employment action for purposes of a retaliation claim, '[a] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a

---

[2] Defendants suggest that plaintiff has not admistratively exhausted this claim because she did not present it to the EEOC in a charge of discrimination.  *See* Mem. in Supp. of Mot. to Dismiss 8–9.  However, a claim is considered exhausted when it "alleg[es] retaliation by an employer against an employee for filing an EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (citation omitted).

13

charge of discrimination.'" *Bowen-Hooks*, 13 F. Supp. 3d at 224 (quoting *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010)). Plaintiff's description of memorialized counseling pertaining to patient neglect is at least a plausible allegation of that type of action. *See id.* at 225 ("The Court will assume that the counseling memorandum concerning Plaintiff's statements about her age is an adverse action."); *Chioke v. Dep't of Educ. of City of New York*, No. 15-CV-1845 (ERK) (CLP), 2018 WL 3118268, at *13 (E.D.N.Y. June 25, 2018) (concluding that a reasonable jury could find that an admonishment letter placed in an employee's file was an adverse employment action for purposes of a retaliation claim). Finally, plaintiff plausibly alleges a causal connection between the EEOC charge and the written counseling memorandum through her allegations that the investigation stemmed from a co-worker complaint made just weeks after plaintiff filed her charge; that the co-worker's allegation was determined to be "unfounded," First Letter 3; and that plaintiff nevertheless had a counseling memorandum placed in her file, approximately four months after plaintiff filed the EEOC charge. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.").

## CONCLUSION

The motion to dismiss is granted in part and denied in part. The motion is granted as to plaintiff's claims against the individual defendants, plaintiff's ADEA claim against Creedmoor, and plaintiff's Title VII discrimination claim against Creedmoor. The motion is denied as to plaintiff's claim that Creedmoor retaliated against her for filing an EEOC charge. Plaintiff may file an amended complaint within 30 days. The new complaint must be captioned "Amended

14

Complaint" and shall bear the same docket number as this order.  Absent an amended complaint, litigation will continue on plaintiff's remaining claim.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 30, 2023
Brooklyn, New York

15